IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES I. CAMERON, JR.,

    Plaintiff,

    v.

CITY OF WICHITA, et al.,

    Defendants.

Case No.  22-1168-JAR

## MEMORANDUM AND ORDER

Plaintiff James I. Cameron, Jr., filed this suit against the City of Wichita and two police officers, Brek Train and Kyle Boal, in their individual and official capacities. Plaintiff asserts, under 42 U.S.C. § 1983, that Train and Boal violated his constitutional rights to be free from excessive force and unreasonable searches when they responded to Plaintiff's 911 call. Plaintiff further alleges a state law battery claim against Train and a state law negligent training claim against the City of Wichita. This matter is before the Court on Plaintiff's *pro se* Motion for Summary Judgment (Doc. 58), and Defendant's Cross-Motion for Summary Judgment (Doc. 67). The motions are fully briefed and the Court is prepared to rule. For the reasons stated below, the Court denies Plaintiff's motion for summary judgment, grants Defendants' motion for summary judgment on Plaintiff's §1983 claims, and declines to exercise supplemental jurisdiction over the state law claims.

**I.**  **Legal Standards**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1] In

---

[1] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[3] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4] A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[6] Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[7] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[8] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9] In setting forth these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or

---

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[4] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[8] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[9] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

specific exhibits incorporated therein."[10]  A nonmovant "cannot create a genuine issue of material fact with unsupported, conclusory allegations."[11]  A genuine issue of material facts must be supported by "more than a mere scintilla of evidence."[12]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to 'secure the just, speedy and inexpensive determination of every action.'"[13]  In responding to a motion for summary judgment, a party cannot rest on "ignorance of the facts, on speculation, or on suspicion" to escape summary judgment.[14]

In deciding this motion, the Court is mindful that Plaintiff proceeds *pro se*; therefore, the Court must construe his pleadings liberally.[15]  However, *pro se* plaintiffs may not rely on conclusory allegations to overcome their burden to establish that a general issue of material fact exists.[16]  The Court cannot assume the role of advocate,[17] nor can the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[18]  Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[19]

---

[10] *Adler*, 144 F.3d at 671.

[11] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[12] *Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1460 (10th Cir. 1997).

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[14] *Genzer v. James River Ins. Co.*, 934 F.3d 1156, 1160 (10th Cir. 2019) (quoting *Conaway v. Smith*, 853 F.3d 789, 794 (10th Cir. 1988)).

[15] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[16] *Hastings v. Campbell*, 47 F. App'x 559, 560 (10th Cir. 2002).

[17] *Hall*, 935 F.2d at 1110.

[18] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[19] *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules)).

## II.     Uncontroverted Facts

D. Kan. Rule 56.1(a) provides that "[a]ll material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." Because Plaintiff did not specifically controvert any of Defendants' factual assertions,[20] the Court accepts Defendants' factual assertions as uncontroverted to the extent that they are supported by the record.[21] The following facts are deemed uncontroverted or construed in the light most favorable to Plaintiff.

On December 17, 2021, at around 10:30 p.m., Plaintiff called 911 to report that a male had broken into his home and attacked him. Plaintiff reported to dispatch that the attacker stated that he would shoot someone and that someone was going to die. A woman was present in the house during the incident and she also called 911 to request officer assistance. The woman was later identified as Tannica Tillis. Tillis told dispatch that the attacker had broken into the house, had a steak knife, was punching holes in the walls, and was choking another male. She also reported hearing the attacker say that everyone was going to die.

Dispatch advised officers of a disturbance with weapons call at Plaintiff's address. Train and Boal were on duty and responded to the call. Dispatch told responding officers that a lot of screaming and yelling could be heard, and that the suspect said he was going to prison and would fight whoever. Dispatch also advised the officers that it received information that the suspect had left the scene, heading southbound in a four-door car.

---

[20] Plaintiff failed to file a timely response. Plaintiff's response was due on July 10, 2023 (Doc. 79), but Plaintiff did not file a response until July 14, 2023 (Doc. 89). However, even if Plaintiff's response was timely, he does not support any of his factual allegations with citations to the record. *See* Doc. 89 at 1–2. Out of an abundance of caution, the Court also considered Plaintiff's statement of facts in his Motion for Summary Judgment (Doc. 58), but Plaintiff did not support his factual allegations with citations to the record in that motion either. Therefore, the Defendants' statement of facts must be accepted to the extent it is supported by the record.

[21] *See Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1207 (10th Cir. 2017) (courts "cannot ignore clear, contrary video evidence in the record depicting the events as they occurred.").

Train and Boal heard dispatch state that the suspect had left, but did not personally see or hear anyone leaving the premises. The officers announced their presence and approached Plaintiff's front door with their guns drawn. The front door was open and showed signs of forced entry. Plaintiff came up to the door with a cell phone to his ear, but did not come outside immediately. Plaintiff had not identified himself to the officers at this point.

As both officers continued to point their guns at Plaintiff, Train asked Plaintiff to come outside. Plaintiff did not immediately comply with the order and Train continued to request that Plaintiff quickly come outside and talk to Boal. Plaintiff then stepped out onto the porch and began to ask Train why he had his weapon out. Train tried to direct Plaintiff to get off the porch and sit down away from the door, and responded that his weapon was out because of the weapons reported on the scene. Train then raised his voice and said "hey, no, come out here!" and pushed Plaintiff towards Boal to get him away from the door. Train did not push Plaintiff all the way off the porch.

After Train pushed Plaintiff away from the door, Train immediately began shouting "Ma'am!" into the house to locate the other 911 caller. Within a few seconds, Tillis appeared in eyeshot and Train said "get out here." Tillis came out of the house and Train asked her whether there was anyone else inside, and she said "no." While this was happening, Plaintiff was yelling at Boal about how Train put his hands on Plaintiff. Boal and an unidentified female police officer calmed Plaintiff down, at which point Train and Boal entered the house.

Train and Boal conducted a protective sweep of the house that lasted approximately 42 seconds. The officers looked in all the rooms, opening doors and shining lights into corners, and did not locate anyone else. The officers then went outside and began to question Plaintiff and

Tillis about where the suspect went. Soon after, Train and Boal accompanied Plaintiff and Tillis inside the house and proceeded to interview them separately about the incident.

## III. Discussion

### A. Section 1983 Claims

Plaintiff asserts four constitutional claims under § 1983 against Train and Boal in their individual and official capacities. In Counts I through III, Plaintiff asserts that Train and Boal violated his Fourth Amendment right to be free from excessive force. In Count IV, Plaintiff asserts that Train violated his Fourth Amendment right to be free from unreasonable searches. After considering each claim below, the Court finds that Defendants are entitled to qualified immunity on the individual capacity claims and that Plaintiff fails to establish municipal liability on the official capacity claims.

#### 1. Individual Capacity

To establish individual liability in a § 1983 suit, a plaintiff must show that an official, "acting under color of state law, caused the deprivation of a federal right."[22] Suing a state official in his individual capacity opens the door for the official to assert the defense of qualified immunity, as Train and Boal assert here. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions"[23] and protects "all but the plainly incompetent or those who knowingly violate the law."[24] Train and Boal's invocation of qualified immunity changes the summary judgment burdens on the individual capacity claims as follows:

> When a defendant asserts qualified immunity at summary
> judgment, the burden shifts to the plaintiff, who must demonstrate

---

[22] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[23] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

[24] *Malley v. Briggs*, 475 U.S. 335, 341 & 343 (1986).

6

> on the facts alleged that (1) the defendant's actions violated his or her constitutional or statutory rights, and (2) the right was clearly established at the time of the alleged misconduct. "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing 'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'"[25]

As already mentioned, Plaintiff has not responded to Defendants' summary judgment motion invoking qualified immunity. Thus, he will fail to meet the two-part test set forth above unless his Motion for Summary Judgment alleges sufficient facts to demonstrate that Train and Boal's conduct violated his Fourth Amendment rights.[26]

### a.     Excessive Force

The Court first considers whether Plaintiff has demonstrated that Train and Boal violated his Fourth Amendment right to be free from excessive force. In Counts I through III, Plaintiff claims that he suffered three instances of excessive force: (1) when Train pushed him; (2) when Train pointed a gun at him; and (3) when Boal pointed a gun at him. Train and Boal move for summary judgment on the first factor of the qualified immunity test by arguing that Plaintiff cannot show that they violated Plaintiff's constitutional rights.

To state a claim of excessive force under the Fourth Amendment, a plaintiff must show both that a "seizure" occurred and that the seizure was "unreasonable."[27] Courts determine whether the actions were objectively reasonable in light of the surrounding facts and circumstances, including the severity of the crime at issue and whether the suspect posed an

---

[25] *Est. of Beauford v. Mesa County*, 35 F.4th 1248, 1261–62 (10th Cir. 2022) (quoting *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1239 (10th Cir. 2018)) (citations omitted).

[26] As noted above, Plaintiff does not support any of his factual allegations in his motion for summary judgment with citations to the record, nor does he cite any case law to support his arguments. Doc. 58.

[27] *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–99 (1989).

7

immediate threat to the safety of the officer or others.[28]  In analyzing the surrounding facts and circumstances, courts must judge the officer's actions from the perspective of a reasonable officer on the scene, who is often forced to make split-second judgments about the amount of force that is necessary under the particular circumstances.[29]  "The court cannot, in the serenity of its chambers, apply 20/20 hindsight in determining the reasonableness of the defendants' actions."[30]  Additionally, "to successfully state an excessive force claim, the plaintiff must establish that he suffered significant injury or that the defendant's actions were sufficiently reprehensible."[31]

Defendants concede that Plaintiff was briefly seized when Train and Boal pointed their guns at him, and when Train prevented him from reentering the house by pushing him away from the door.  However, Defendants argue that the seizure was reasonable because it was brief and the situation was inherently dangerous.  Plaintiff argues that the seizure was unreasonable because Train and Boal had no reason to believe there was imminent danger.  The Court agrees with Train and Boal that the seizure was reasonable.

First, Train and Boal's decision to point their weapons at Plaintiff was objectively reasonable.  Train and Boal had their weapons out when they approached the house because they had been called to an aggravated burglary and aggravated assault with two victims.  They pointed their guns at Plaintiff because he did not immediately identify himself, and then did not immediately comply with the order to come outside.  Although Train and Boal had been advised by dispatch and Plaintiff that the attacker had left the scene, neither officer personally observed

---

[28] *Graham v. Connor*, 490 U.S. 386, 396 (1989).

[29] *Id*. at 396–97.

[30] *Pride v. Kan. Highway Patrol*, 793 F. Supp. 279, 281 (D. Kan. 1992).

[31] *Id*. at 282 (citing *Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir. 1992)).

8

anyone leaving the residence nor a car leaving the scene. From the perspective of a reasonable officer, it was reasonable for Train and Boal to exercise caution by brandishing their guns, considering that the attacker could have concealed himself inside, or there could have been an injured victim inside.

Second, Train's use of force in pushing Plaintiff away from the door was objectively reasonable. Train pushed Plaintiff away from the door when Plaintiff did not comply with an order to move off the porch. At this point, the female caller had not been located and the officers could not be completely sure that the attacker was gone. Considering the severity of the offense reported in the 911 calls and Plaintiff's hesitation in responding to the officers' orders, Train's split-second judgment to push Plaintiff away from the door to secure the scene was reasonable.

Moreover, while Plaintiff was distressed by Train and Boal's use of force against him, Plaintiff has made no showing that he suffered significant injury or that the officers' conduct was reprehensible. Plaintiff does not allege that he suffered any physical harm, but rather alleges that he has been diagnosed with Post-Traumatic Stress Disorder ("PTSD") because of the incident. However, Plaintiff offers no evidentiary support for this diagnosis nor any specific argument about why PTSD constitutes a significant injury cognizable under the Fourth Amendment. Without evidence in the record detailing Plaintiff's harm, the Court cannot find that Plaintiff suffered a serious injury. And without any argument that Train and Boal acted reprehensibly, Plaintiff fails to make out an excessive force claim. Since Plaintiff failed to clear the first hurdle of the qualified immunity test, Train and Boal are entitled to qualified immunity on Counts I through III.

### b. Unreasonable Search

In Count IV, Plaintiff asserts that Train violated his Fourth Amendment right to be free from unreasonable searches when he conducted a warrantless protective sweep of Plaintiff's residence.[32] The Fourth Amendment provides that "warrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable . . . ."[33] The Tenth Circuit has recognized that the need for officers to protect themselves and others is one such exigency, and it exists when two factors are met: "(1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is [*sic* ] reasonable."[34] The officers bear the burden of establishing that there were exigent circumstances justifying the warrantless entry.[35]

Train and Boal assert that they did not see anyone leave the premises and that they were not required to accept the dispatch information that the suspect had fled at face value. Defendants argue that this, combined with the severity of the offense and the threats made by the attacker, constituted exigent circumstances. Therefore, the relevant question is whether it was objectively reasonable for Train and Boal to believe that there was an immediate need to search the house in order to protect their safety or the safety of others.

---

[32] Plaintiff asserts Count IV against only Train. Doc. 39 at 7. However, Train and Boal conducted the protective sweep of Plaintiff's residence together. Therefore, the Court refers to both officers in its discussion of Count IV.

[33] *Armijo ex rel. Armijo Sanchez v. Peterson,* 601 F.3d 1065, 1070 (10th Cir. 2010) (quoting *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978)).

[34] *Id.* (quoting *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006)).

[35] *Id.* (citing *United States v. Reeves*, 524 F.3d 1161, 1169 (10th Cir. 2008)).

The Court finds that, based on the totality of the circumstances, the search was objectively reasonable. While it is true that Plaintiff and Tillis both told the officers that the attacker had fled, it was reasonable for Train and Boal to make sure that no one else was in the house before entering to conduct interviews. Train and Boal took only 42 seconds to search the premises, and the video evidence supports the argument that they were merely checking to make sure no one was hiding in the house. Given that Train and Boal were the first officers to arrive on the scene, it was reasonable for them to believe that there was an immediate need to secure the premises for their own safety and for the safety of Plaintiff and Tillis. Moreover, the manner and scope of the search were reasonable. The search was brief and consisted of opening doors and shining flashlights into corners.

The Court finds that Defendants have met their burden of demonstrating that exigent circumstances supported a limited search of Plaintiff's house. Since the search did not violate Plaintiff's Fourth Amendment rights, Plaintiff fails to satisfy the first prong of the qualified immunity test. Therefore, Train is entitled to qualified immunity on the individual capacity claim in Count IV.

### c.    Clearly Established

Even assuming, *arguendo*, that Plaintiff demonstrated that his Fourth Amendment rights were violated, Plaintiff has made no showing that Train and Boal violated clearly established law. "A right is clearly established for qualified immunity purposes if 'every reasonable official would have understood that what he is doing violates that right.'"[36] This showing typically requires the plaintiff to identify "'an on-point Supreme Court or published Tenth Circuit decision

---

[36] *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1303 (10th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

that establishes the unlawfulness of the defendant's conduct,' or 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'"[37] "[P]laintiff bears the burden of citing to [the Court] what he thinks constitutes clearly established law," and the cited authority "must have placed the statutory or constitutional question beyond debate."[38]

Given Plaintiff's failure to respond to the motion for summary judgment, he has not met his burden of citing authority that his clearly established Fourth Amendment rights were violated by either Train and Boal's use of force or brief search of his house. Moreover, there is Supreme Court authority that Train and Boal's actions fall within the range of constitutionally permissible actions. Therefore, even if Plaintiff could show that Train and Boal violated his constitutional rights, he could not show that his rights were clearly established at the time Train and Boal responded to his 911 call. Given that Plaintiff fails to satisfy the qualified immunity test under either prong, Train and Boal are entitled to qualified immunity on Counts I through IV of Plaintiff's § 1983 claims under the Fourth Amendment.

### 2. Official Capacity

Plaintiff also brings Counts I through IV against Train and Boal in their official capacities. Suing Train and Boal in their official capacities is a way of pleading an action against the City of Wichita for the actions of Train and Boal.[39] To make out an official capacity claim, Plaintiff must show that the allegedly unconstitutional acts resulted from a government policy or custom, and that there is a causal link between the government's policy or custom and the

---

[37] *George ex rel. Bradshaw v. Beaver Cnty. ex rel. Beaver Cnty. Bd. of Comm'rs.*, 32 F.4th 1246, 1258 & n.4 (10th Cir. 2022) (quoting *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019)).

[38] *Id.* (first quoting *Crane*, 15 F.4th at 1303; and then quoting *Frasier v. Evans*, 992 F.3d 1003, 1014 (10th Cir. 2021)).

[39] *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

violations.[40] However, "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers."[41] In fact, it would be "inconceivable" to hold a municipality liable where its officers inflicted no constitutional harm.[42] Therefore, the Court's finding that Train and Boal are entitled to qualified immunity because they did not violate Plaintiff's constitutional rights precludes a finding that the City of Wichita is liable for any constitutional violation. Defendants are entitled to summary judgment on the official capacity § 1983 claims in Counts I through IV.

### B. State Law Claims

Plaintiff alleges two state law claims: (1) a battery claim against Train, and (2) a negligent training claim against the City of Wichita. Because the Court grants summary judgment to Defendants on Plaintiff's federal claims, it declines to exercise supplemental jurisdiction over the remaining state law claims.

Whether to exercise supplemental jurisdiction over state law claims is committed to the Court's sound discretion.[43] 28 U.S.C. § 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"[44] Upon a pretrial disposition of the federal claims, district courts will generally

---

[40] *Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996).

[41] *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

[42] *Id.* (quoting *Heller*, 475 U.S. at 799).

[43] *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997); *see also Anglemyer v. Hamilton Cnty. Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).

[44] *City of Chicago*, 522 U.S. at 173 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also Gold v. Local 7 United Food & Com. Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998), *overruled on other grounds by Styskal v. Weld Cnty. Bd. of Cnty. Comm'rs*, 365 F.3d 855, 859 (10th Cir. 2004).

dismiss the state law claims without prejudice.[45] "When 'the parties have already expended a great deal of time and energy on the state law claims,' it is appropriate for the 'district court to retain supplemented state claims after dismissing all federal questions.'"[46] "If, however, the parties have not shown they have spent a great deal of time on the state law claims, the 'district court should normally dismiss supplemental state law claims after all federal claims are dismissed.'"[47] "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."[48] The Tenth Circuit has "repeatedly recognized that this is the preferred practice."[49]

Here, there is no compelling reason for the Court to retain jurisdiction over the remaining state law claims and neither party presents an argument to the contrary. Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment (Doc. 67) is **granted** with respect to Plaintiff's § 1983 claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which are hereby dismissed without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 58) is **denied**.

**IT IS SO ORDERED.**

Dated: November 2, 2023

---

[45] *Ball v. Renner,* 54 F.3d 664, 669 (10th Cir. 1995).

[46] *Villalpando ex rel. Villalpando v. Denver Health and Hosp. Auth.*, 65 F. App'x 683, 688 (10th Cir. 2003) (quoting *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002)).

[47] *Id.*

[48] *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

[49] *Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008).

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
